## THE GEORGIE.

### COMPAGNIE GÉNÉRALE TRANSATLAN-TIQUE v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.
July 12, 1926.)

No. 4792.

**1. United States ⊂⇒78.**

Though United States is not responsible for negligence of officers or agents, responsibility for destruction of public property needlessly exposed to peril may not be shifted to those injuring it in lawful exercise of rights conferred by law.

**2. Navigable waters ⊂⇒22(6).**

Navigators held not required to take notice of location of submarine cables in bay, so as to create liability of ship for injury to unknown cable.

**3. Navigable waters ⊂⇒22(6).**

Although United States is not bound by Civ. Code Cal. §§ 537, 539, requiring notice of location of submarine cables in bay, it must give some notice or warning of location before liability can attach to ship injuring cables.

**4. Navigable waters ⊂⇒22(6).**

Dropping anchor in public waters in vicinity of unknown and unmarked submarine cables does not constitute negligence, although outside of anchorage ground established pursuant to Act March 4, 1915, § 7 (Comp. St. § 9959a).

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Adolphus F. St. Sure, Judge.

Libel by the United States against the French Steamship Georgie, her engines, boilers, tackle, apparel, etc., claimed by the Compagnie Générale Transatlantique. From a decree for libelant, claimant appeals. Reversed, with directions.

Ira S. Lillick, of San Francisco, Cal. (J. Arthur Olson and Chalmers B. Graham, both of San Francisco, Cal., of counsel), for appellant.

Geo. J. Hatfield, U. S. Atty., and James D. Whalen, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from a decree awarding damages for injury to a telephone cable. Except in one particular, there is little or no controversy over the facts. For some years last past the United States has maintained a submarine telephone cable between the westerly end of Pier 41 in the bay of San Francisco and Alcatraz Island. At the time of the injury complained of there was no monument or sign at the pier, or elsewhere, to indicate the location of the cable, nor was its location indicated on any of the charts of the bay. A cable of the Great Western Power Company left the opposite corner of the same pier, and that company maintained a sign on the pier indicating the location of the cable. This sign was doubtless maintained to satisfy the requirements of the Civil Code of California, which provides that any person who injures or destroys, through want of proper care, any necessary or useful fixture of any telegraph or telephone corporation, is liable to the corporation for all damages sustained thereby, and any vessel which, by dragging its anchor, or otherwise, breaks, injures, or destroys the subaqueous cable of a telegraph or telephone corporation, subjects its owner to the like damages; but no telegraph or telephone corporation can recover damages for the breaking or injuring of any subaqueous telegraph or telephone cable, unless such corporation has previously erected, on either bank of the waters under which the cable is placed, a monument indicating the place where the cable lies, and publishes for one month in some newspaper, most likely to give notice to navigators, a notice giving a description and the purpose of the monuments, and the general course, landings, and termini of the cable. Civil Code, §§ 537 and 539.

The government cable and the Great Western Power Company cable were about 200 feet apart. The former was distant 150 feet from the center and 125 feet from the extreme end of the sign maintained by the latter. About the middle of the afternoon of September 25, 1924, the steamship Georgie approached pier 41 for the purpose of docking, and, to make his vessel swing to the tide and wind, the pilot in charge dropped his anchor. When the anchor was raised, it carried the cable with it, causing the injury complained of. It did not appear that the pilot had any notice or knowledge of the location of the government cable, except such notice as might be imputed to him, nor did it appear that the location was generally known. Up to this point there was no conflict in the testimony. The parties differed only as to the necessity for dropping the anchor at the time and for the purpose stated. There was nothing unusual or abnormal in the state of the tide or wind, or in the condition of the weather, and we agree with the court below that the act of the pilot in dropping the anchor was negligent, if as a matter of fact he knew of the location of the cable, or if as a matter of law, notice of such location is to be imputed to him.

[1-3] The court below ruled as a matter of law that it is the imperative duty of every pilot navigating the waters of San Francisco Bay to fully inform himself as to the location of every government cable, known or unknown, and to guide his course and conduct accordingly, and that his failure so to do will render his ship liable for any mishap that may result from such failure. If this ruling is correct, the decree must be affirmed; but, if not, the decree must be sustained on some other ground, if sustained at all. In the absence of statute, we are not prepared to say that any such onerous duty is imposed by law upon those engaged in the rightful navigation of the public waters of the state or United States. The public right of navigation in all navigable waters is the dominant one, and, should a private corporation lay a cable in public waters without notice or warning, we apprehend it will not be claimed that such corporation could maintain an action against any vessel that might cause injury to the cable in the lawful exercise of this dominant right. And, while the United States is not responsible for the negligence of its officers or agents, yet if public property is needlessly exposed to peril by such officers or agents, the responsibility for its destruction should not be shifted to those who may happen to injure it in the lawful exercise of a right conferred by law.

According to the record, seven of these submarine cables are maintained by the government in San Francisco Bay, but by what department or departments we are not advised, beyond the fact that the one now in controversy was maintained by the War Department. Under such circumstances, must every person navigating the waters of the bay take notice of the termini and course of each of these several cables at his peril, and, if so, when does that duty begin? The cable in question at Pier 41 was changed from another location without notice or warning in April, 1924, about five months before the accident in question. Were all navigators on the bay bound to take notice of that change immediately, or were they allowed a reasonable time within which to inform themselves? The court below was of opinion that it was their plain duty to make inquiry and seek information. If so, how often must they inquire, and from whom? May they rely on information furnished by local officers or agents, or must they seek information from the head of the appropriate department. If information is refused, or if the information given is incorrect, are the navigators and their ships protected, or is that their misfortune? These and other inquiries that will readily suggest themselves are ample, it would seem, to demonstrate the impropriety of adopting any such hard and fast rule as that laid down by the court below, especially in view of the fact that no such rule is at all necessary for the protection of either the government or its property. The government is not bound by the state statute, but that statute prescribes a sound and wholesome rule of public policy, and it would seem that the government is in duty bound to give some notice or warning of some kind as to the location of these numerous submarine cables over which vessels of every kind are constantly moving.

[4] The libel is, of course, based on negligence, and the mere dropping of an anchor in public waters in the vicinity of an unknown and unmarked cable does not constitute such negligence. But it is said that the anchor was dropped outside of the established anchorage grounds, and that this of itself was negligence. Section 7 of the Act of March 4, 1915 (38 Stat. 1053), provides:

"That the Secretary of War is hereby authorized, empowered, and directed to define and establish anchorage grounds for vessels in all harbors, rivers, bays, and other navigable waters of the United States whenever it is manifest to the said Secretary that the maritime or commercial interests of the United States require such anchorage grounds for safe navigation and the establishment of such anchorage grounds shall have been recommended by the Chief of Engineers, and to adopt suitable rules and regulations in relation thereto; and such rules and regulations shall be enforced by the Revenue Cutter Service under the direction of the Secretary of the Treasury." Comp. St. § 9959a.

Pursuant to the authority thus conferred, temporary and general anchorage grounds were established in the bay, and one of the regulations adopted provides:

"Except in cases of great emergency, no vessel shall be anchored in the bay of San Francisco outside of the anchorage areas hereinbefore described, nor shall any vessel be made fast to the exterior end of any pier nor to any vessel lying at the exterior end of any pier or along any bulkhead, in such manner as to obstruct the passage of any vessel to or from the adjacent wharf property or impede the movement of any vessel entering or leaving adjacent slips."

The primary object of this statute and the regulations adopted pursuant thereto was to insure safe navigation on the surface, not to protect submarine cables or other structures.

beneath the water, and it would seem that the mere dropping of an anchor to assist a moving vessel in making a turn or in docking would violate neither the statute nor the regulations. A moving vessel, using her anchor for such a purpose, is no more an obstruction to navigation than the like movement by a vessel making the turn or landing without the use of the anchor.

For these reasons, the charges of negligence have not been sustained, and the decree of the court below is reversed, with directions to dismiss the libel.